UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUNBELT RENTALS, INC., a
North Carolina Corporation,

        Plaintiff,

v.                     Case No: 2:24-cv-947-JES-KCD

BRIAN COX, individually,
and LTC POWER SOLUTIONS,
LLC, a Florida Limited
Liability Company,

        Defendants.

_____

## OPINION AND ORDER

This matter now comes before the Court on the Motion to Dismiss (Doc. #18) filed by Defendants Brian Cox ("Cox") and LTC Power Solutions, LLC ("LTC") (collectively, "Defendants"). Plaintiff Sunbelt Rentals, Inc. ("Sunbelt" or "Plaintiff") filed a Response in Opposition (Doc. #26.) For the reasons set forth below, the motion is **GRANTED** to the extent that Plaintiff's Verified Complaint (Doc. #9) is dismissed without prejudice and Plaintiff is given leave to file an amended complaint.

Plaintiff has also filed a Motion for Preliminary Injunction (Doc. #31.) As the underlying complaint is being dismissed, Plaintiff's Motion for Preliminary Injunction is **DENIED** as **MOOT**. Plaintiff may file another such motion once an amended complaint has been filed.

**I.**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To avoid dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. "Factual allegations that are merely consistent with a defendant's liability fall short of

being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, a court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

**II.**

The Complaint (Doc. #9) filed by Plaintiff Sunbelt Rentals, Inc. ("Sunbelt" or "Plaintiff") alleges the following:

Sunbelt is a North Carolina corporation with its principal place of business in Fort Mill, South Carolina. Defendant LTC Power Solutions, LLC ("LTC") is a Florida limited liability company based in Miami-Dade County, Florida. Defendant Brian Cox ("Cox") is a former Sunbelt employee now employed by LTC. Cox resides in Charlotte County, Florida.

**A. Sunbelt Rentals, Inc.**

Sunbelt is a leader in the equipment rental industry. It has a vast network of locations in North America, and a large portfolio of products and services, from which it delivers solutions to support any job. There are no less than twenty-five industrial sectors to which Sunbelt's expertise extends, including manufacturing, agriculture, aviation, aerospace, education, hospitality, mining, and oil and gas.

That expertise has created substantial relationships with

existing customers. Sunbelt invests time and effort into its brand and each community it serves to develop customer goodwill, to grow its business relationships, and to advance its reputation. Sunbelt has developed substantial client relationships, goodwill, and expertise in industry-specific equipment rentals in Lee County and throughout Florida due to its reputation for tailored, quality, prompt, and expert service and outcomes for customers.

As part of its business, Sunbelt operates a power line of business that is focused, in part, on renting generators, fuel tanks, and other accessories.

### B. Employment Agreement

Cox entered into an Employment Agreement (the "Agreement") with Sunbelt on March 1, 2019. The Agreement contains a covenant that remains in force for one year after Cox leaves Sunbelt's employ (the "Covenant" or "Section 5.2.1"). The Covenant forbids Cox from soliciting "any person" who was employed by Sunbelt at "any time" in the year before Cox's departure:

> 5.2 During the term of this Agreement and for a period of one (1) year after . . . this Agreement [expires or terminates] for any reason (the "Restrictive Period"), Employee shall not directly or indirectly:

> 5.2.1 solicit on behalf of a competing business the employment of any person who at any time during the twelve (12) calendar months immediately preceding

the termination or expiration of this Agreement was
employed by Corporation.

(Doc. #9, p. 69.)

### C. LTC Power Solutions, LLC

LTC is a "direct competitor" of Sunbelt that "represents
itself as providing customers all of their power solution and
generator needs." (Id. at ¶¶ 5, 22.)

### D. Sunbelt-Cox and LTC-Cox Relationships

Sunbelt hired Cox as an Industrial Sales Representative in
September 2011, and in March 2019, as an Outside Sales
Representative in Commercial Power.[1]  On April 26, 2024, Cox and
Sunbelt parted ways.  LTC hired Cox shortly afterwards to grow
its customer relationships within Southwest Florida, and to
target some of Sunbelt's customers.

### E. Alleged Solicitation of Sunbelt Employees

On August 26 and September 10, 2024, Cox emailed three
Sunbelt employees, Trevon Bradley, Joseph Schroeder, and Eric
Figueroa.  He sent them information about, inter alia, health
insurance at LTC.

Schroeder and Bradley were Shop Foremen at Sunbelt
locations in Port Charlotte and Fort Myers, respectively.
Schroeder left Sunbelt and joined LTC, causing his branch at

---

[1] Sunbelt alleges that Cox had "extensive access" to
confidential information and customer relationships (id. at ¶
31-33), but does not allege the breach of any non-compete
provision occasioned solely by LTC's employment of Cox.

Port Charlotte to be understaffed, which impacted customer service. Sunbelt had to hire "third parties to cover equipment repairs that would have otherwise been completed by Schroeder." (Id. at ¶ 48.)   When Sunbelt filed its Verified Complaint in state court on October 3, 2024, Bradley had not yet left Sunbelt's Fort Myers branch, but reportedly planned to join LTC two days later.[2]

**F. Sunbelt-Cox and Sunbelt-LTC Communications**

On April 29, 2024, three days after Cox's departure, Sunbelt sent him a letter reminding him of his continuing obligations under the Agreement.   In September 2024, Sunbelt discovered Cox's emails to Bradley, Schroeder, and Figueroa. Sunbelt asserts that on September 6, 2024, it sent a copy of the Agreement to LTC,[3] and demanded that LTC cease tortiously interfering with Sunbelt's contractual relationships with its employees.   On September 20, 2024, Sunbelt sent Cox additional correspondence regarding the alleged solicitation.

---

[2] Sunbelt alleges that two other former employees, Justin Rueda and Zachary Abbott, are employed by LTC (Id. at ¶ 37), but does not allege that Cox solicited either of them.

[3] This assertion is contradicted by Exhibit C, which Sunbelt attaches to its Complaint.  (Doc. #9, p. 76).  It appears that Sunbelt only sent LTC letters that it had previously sent to Abbott and Rueda, supra n. 1, and copies of Abbott's employment agreement, which has a different non-solicit provision.  (Doc. #9, p. 93, 104); id. at 76 (explaining that the purported covenant bars the solicitation of "any person that was employed by, or provided services to, Sunbelt within the past twelve (12) months." (emphasis added)).

### G. Legitimate Business Interests

Sunbelt has "legitimate business interests" in protecting "customer[ ]relationships" and "associated goodwill" "in each of the markets it operates," by "ensuring its relationships with its employees remain intact." (Id. at ¶ 55.)

### III.

Sunbelt sued Cox and LTC on four counts, each of which turns on Cox's alleged solicitation of Bradley, Schroeder, and Figueroa: Counts I and II assert claims of breach of contract against Cox, seeking injunctive relief and damages; Count III asserts a claim of tortious interference with contractual relations against LTC; and Count IV asserts a claim of tortious interference with business relations against Cox and LTC. (Id. at pp. 8–12.)

### A. Arguments

The Court turns first to Counts I and II. Sunbelt seeks injunctive relief and damages due to Cox's alleged breach of Section 5.2.1.

Defendants have filed a motion to dismiss (Doc. #18), arguing that Sunbelt has not adequately alleged a legitimate business interest to support Section 5.2.1's validity. Defendants argue further that the Covenant is unenforceable as it is overbroad, both facially and as-applied. Defendants emphasize that Section 5.2.1's use of the term "any person"

would include all of Sunbelt's "10,571 employees" at "1,229 locations" across "North America, including Canada and Mexico." (<u>Id.</u> at 13-14.) And Defendants object to Section 5.2.1's application to Bradley, Schroeder, and Figueroa, who are simply mechanics, and whom Sunbelt has not alleged had access to confidential information or customer relationships.

Sunbelt responds (Doc. #26) that it has adequately pleaded legitimate business interests, disagrees that its allegations are conclusory, and argues that at any rate specificity is not needed at this stage of the proceedings. Sunbelt also counters that it has sufficiently alleged that the Covenant is reasonably necessary to protect its interests, and asserts that Section 5.2.1 is geographically "limited in scope to the 'Territory,'" which further supports its reasonableness. (<u>Id.</u> at 11.)

**B. Analysis**

Florida law governs this diversity case. The three elements of breach of contract under Florida law are (1) a "valid contract"; (2) a "material breach"; and (3) "damages." <u>IPS Avon Park Corp. v. Kinder Morgan, Inc.</u>, No. 22-10547, 2023 WL 3750708, at *2 (11th Cir. June 1, 2023); <u>Friedman v. New York Life Ins. Co.</u>, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). When a contract action is based on a restrictive covenant, however, a plaintiff must also establish that the covenant is a "valid" and "enforceable" restraint of trade. <u>Rauch, Weaver, Norfleet,</u>

Kurtz & Co. v. AJP Pine Island Warehouses, Inc., 313 So. 3d 625, 630 (Fla. 4th DCA 2021); Vital Pharms., Inc. v. Alfieri, 23 F.4th 1282, 1291 (11th Cir. 2022).

To be valid and enforceable, a restrictive covenant must be (1) supported by a "legitimate business interest"; and (2) "reasonable with regard to time, area[,] and line of business." Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1231 (11th Cir. 2009) (citing Fla. Stat. § 542.335). Legitimate business interests include: (1) "[t]rade secrets"; (2) "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets"; (3) "[s]ubstantial relationships with specific prospective or existing customers, patients, or clients"; (4) "[c]ustomer, patient, or client goodwill associated with . . . [a] specific geographic location [or] [a] specific marketing or trade area"; and (5) "[e]xtraordinary or specialized training." Fla. Stat. § 542.335(1)(b).

Florida law "does not protect covenants whose sole purpose is to prevent competition per se"; such contracts are "void" as "against public policy." Rauch, 313 So. 3d at 630 (internal quotations removed).

### (1) Validity

In response to Defendants' motion, Sunbelt asserts that "allegations regarding its legitimate business interests are

found throughout [its] Complaint," and it broadly references customer and business relationships, goodwill, and reputation. (Doc. #18, p. 6.)

As a general matter, it is true that such interests may constitute legitimate business interests.[4]   However, to meet federal pleading standards, generic and conclusory allegations will not suffice; an employer must allege "how" those interests are being or would be harmed by a competitor hiring a former employee.  Passalacqua v. Naviant, Inc., 844 So. 2d 792, 796 (Fla. 4th DCA 2003); see Semper Foods, LLC v. Ouellette, No. 23-CV-81420, 2024 WL 3104066, at *11 (S.D. Fla. May 6, 2024) ("[plaintiff] has not met its burden of "articulat[ing] exactly how the information is unique or proprietary [and] explain[ing] how [defendant] could unfairly utilize that information to compete against it."), R. & R. adopted, 2024 WL 3495321 (S.D. Fla. July 19, 2024); see also Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC, 223 F. Supp. 3d 1221, 1226 (M.D. Fla. 2016) (emphasizing that "[g]eneric allegations" will not do).

Sunbelt has not alleged that Bradley, Schroeder, or Figueroa have access to valuable, confidential information or substantial customer relationships.  Nor has it alleged that their employment by LTC would improperly transfer customer

---

[4] "Trade secrets" may also be legitimate interests, Fla. Stat. § 542.335(1)(b), but Sunbelt does not claim that any apply here.

goodwill tied to Sunbelt's operations in a specific location or area to LTC's operations in the same location or area.  See Surgery Ctr. Holdings, Inc. v. Guirguis, 318 So. 3d 1274, 1281 (Fla. 2d DCA 2021); Litwinczuk v. Palm Beach Cardio. Clinic, L.C., 939 So. 2d 268, 272 (Fla. 4th DCA 2006).  Sunbelt has also not alleged that those employees are the beneficiaries of extraordinary training and education.  To the contrary, as Defendants note, Sunbelt's allegation that it hired "third parties to cover equipment repairs that would have otherwise been completed by Schroeder" suggests that those employees did ordinary and unspecialized work, such that any interest in barring their departure to LTC would be minimal.

### (2)  *Enforceability*

Despite Sunbelt's assertions to the contrary, Section 5.2.1 does *not* have geographic limitations.  Indeed, it is one of two restrictive covenants in the Agreement without such limits. Compare (Doc. #9, p. 69, Agreement, §§ 5.2.1 and 5.2.3) with (id., Agreement §§ 5.2.2, 5.2.4, and 5.2.5).[5]  Sunbelt also fails to contend with Defendants' argument that Section 5.2.1's

---

[5] Even if Section 5.2.1 had territorial limitations, Sunbelt has not alleged that LTC's employment of Cox, Schroeder, or its prospective employment of Bradley would fall within that scope. Sunbelt has alleged that any injuries in this action center on a Sunbelt store in Lee County, Florida.  (Doc. #9, ¶ 11.)  Sunbelt has also alleged that LTC is based in Miami-Dade County.  (Id. at ¶ 5.)  However, Sunbelt has not alleged that LTC's business overlaps geographically with that of Sunbelt's Lee County store.

use of "any person" renders it facially overbroad.  Sunbelt instead simply asserts that the reasonableness of a restrictive covenant is a question of fact that cannot be resolved on a motion to dismiss.  (Doc. #26, p. 10.)[6]  Where the allegations are *sufficient*, it may be inappropriate to decide the reasonableness of a restrictive covenant on a Rule 12(b)(6) motion.  See Proudfoot Consulting, 576 F.3d at 1237 (quoting Whitby v. Infinity Radio Inc., 951 So. 2d 890, 897 (Fla. 4th DCA 2007)); LT's Benjamin Recs., Inc. v. Machete Music, No. 09-23770-CIV, 2010 WL 2573961, at *5 (S.D. Fla. June 24, 2010).  But Sunbelt's allegations are not sufficient.

### (3) Applicability

Sunbelt has not sufficiently alleged that LTC is a "competing business" under Section 5.2.1.  Sunbelt conclusorily asserts that LTC is a "direct competitor" that "represents itself as providing customers all of their power solution and generator needs."  (Id. at ¶¶ 5, 22.)

However, "[f]actual allegations that are merely consistent with a defendant's liability" are not "facially plausible."

---

[6] It is unclear what limitations in scope—other than the Restrictive Period—would apply to the Covenant in so far as it is animated by Sunbelt's asserted interest in "ensuring its relationships with its employees remain intact."  As Defendants note, the Covenant, so construed, would prohibit *any* employee, from an executive to a janitor, from being hired by a company that does business in any one of the over twenty-five industrial sectors to which Sunbelt's alleged expertise extends.

_Chaparro_, 693 F.3d at 1337.  Sunbelt has not alleged that LTC is in a similar line of equipment-rental business.  Nor has it provided other, adequate factual allegations to support its claim that LTC's business activity clashes with its own.

Without adequate pleadings to plausibly support a preliminary determination that Section 5.2.1 is valid, enforceable, and applicable, Sunbelt's breach of contract claim fails.  Thus, the Court **GRANTS** Defendants' motion to dismiss Counts I and II.

### C. Sunbelt's Remaining Claims

Since Sunbelt has not adequately pleaded that Section 5.2.1 is valid and enforceable, both of its claims of tortious interference fail as well.

Without a valid and enforceable restrictive covenant, there can be no claim of tortious interference with a contractual relationship under Count III.  _Mariscotti v. Merco Grp. At Akoya, Inc._, 917 So. 2d 890, 892 (Fla. 3d DCA 2005) ("If a contract . . . is unenforceable, then an element of a tortious interference claim is absent.") (citing _Sullivan v. Econ. Research Props._, 455 So.2d 630 (Fla. 5th DCA 1984)).[7]

---

[7] Under Florida law, contracts that are "voidable" for certain defects may still form the basis of a claim of tortious interference with a contract. _United Yacht Brokers, Inc. v. Gillespie_, 3772 So. 2d 668, 672 (Fla. 1979).  But invalid and unenforceable restrictive covenants are "void," _Rauch_, 313 So. 3d at 630, not merely voidable.

Furthermore, although claims of tortious interference with a business relationship "need not be evidenced by an enforceable contract," Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994), the alleged "relationship" must still afford the plaintiff "existing or prospective legal or contractual rights." Id. (quoting Register v. Pierce, 530 So.2d 990, 993 (Fla. 1st DCA 1988)).

Defendants argue that without sufficient allegations that Bradley, Schroeder, and Figueroa were employed "for any specific term" or "bound by any restrictive covenant," the law presumes that they are "at-will" employees. (Doc. #18, p. 21–22); see also Russell & Axon v. Handshoe, 176 So. 2d 909, 913 (Fla. 1st DCA 1965) ("if no definite period is otherwise stated or proved for its continuance, [employment] is presumed to be a hiring at will"). If they are at-will employees, then the general rule under Florida law is that no action for tortious interference will lie, Greenberg v. Mount Sinai Med. Ctr. of Greater Miami, Inc., 629 So. 2d 252, 255 (Fla. 3d DCA 1993), unless Sunbelt plausibly alleges that Defendants' interference was "direct and unjustified," Perez v. Rivero, 534 So. 2d 914, 916 (Fla. 3d DCA 1988), that is to say, that their "motive [was] purely malicious and not coupled with any legitimate competitive economic interest," Heavener, Ogier Servs., Inc. v. R. W. Fla. Region, Inc., 418 So. 2d 1074, 1077 (Fla. 5th DCA 1982).

Sunbelt responds that Defendants have acted "unjustifiably" by "us[ing] Cox" to solicit employees in "violat[ion]" and "circumvention" of Section 5.2.1. (Doc. #9, ¶ 90; Doc. #26, p. 16). But, as previously mentioned, Sunbelt has not adequately pleaded that Section 5.2.1 is valid, enforceable, or applicable.

As a general matter, Sunbelt's allegations are insufficient to show that Defendants' alleged interference was "purely malicious" and lacking in "any legitimate competitive economic interest." Indeed, Sunbelt alleges that LTC hired Cox to "grow its customer relationships within Southwest Florida" and to "target some of [Sunbelt's] customers." (Doc. #9, ¶ 36.) However, "Florida law recognizes the right of competitors to compete for customers." Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc., 262 F.3d 1152, 1158 (11th Cir. 2001); see also Wackenhut Corp. v. Maimone, 389 So.2d 656, 658 (Fla. 4th DCA 1980) (adopting the rule that "[w]here [a] contract interfered with is terminable at will, the privilege of competition has been recognized. In such a case there is . . . only an expectancy [with which] a competitor has the privilege of interference in order to acquire the business for himself."). Sunbelt pleads no other potential motives for LTC's alleged interference.

Therefore, the Court **GRANTS** Defendants' motion to dismiss

Counts III and IV.[8]

Accordingly, it is now

**ORDERED:**

1. Defendants Brian Cox's and LTC Power Solutions, LLC's Motion to Dismiss (Doc. #18) is **GRANTED.**

2. Plaintiff Sunbelt Rentals, Inc.'s Verified Complaint (Doc. #9) is **DISMISSED WITHOUT PREJUDICE.**

3. Plaintiff may file an amended complaint within **thirty (30) days** of the date of this Opinion and Order.

4. Plaintiff's Motion for Preliminary Injunction (Doc. #31) is **DENIED** as **MOOT.**

5. Plaintiff may file a motion for preliminary injunction once it has filed an amended complaint.

**DONE AND ORDERED** at Fort Myers, Florida, this __9th__ day of January 2025.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record

---

[8] In light of the dismissal, the Court declines to address Defendants' arguments about inadequate allegations of knowledge and damages, or about the effect of the independent tort doctrine.