UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUNBELT RENTALS, INC., a
North Carolina Corporation,

    Plaintiff,

v.                            Case No: 2:24-cv-947-JES-KCD

BRIAN COX, individually,
and LTC POWER SOLUTIONS,
LLC, a Florida Limited
Liability Company,

    Defendants.

## OPINION AND ORDER

This matter now comes before the Court on the Motion to Dismiss (Doc. #48) filed by Defendants Brian Cox ("Cox") and LTC Power Solutions, LLC ("LTC") (collectively, "Defendants"). Plaintiff Sunbelt Rentals, Inc. ("Sunbelt" or "Plaintiff") filed a Response in Opposition (Doc. #49.) For the reasons set forth below, the motion is **GRANTED** to the extent that Plaintiff's Amended Complaint (Doc. #47) is dismissed without prejudice and Plaintiff is given leave to file a second amended complaint.[1]

**I**

When analyzing a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and take them

---

[1] This case's background is detailed in an earlier opinion and order (Doc. #45). Thus, the Court only lists those facts relevant to the pending motion to dismiss.

in the light most favorable to the plaintiff. Erickson v. Pardus, 551 U.S. 89 (2007). "Legal conclusions without adequate factual support are entitled to no assumption of truth." Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted).

### A. Insufficient Allegations of (1) Reasonableness With Regard to Area or (2) Client Goodwill Associated with a Specific Geographic Location or a Specific Marketing or Trade Area

In the Court's prior order granting Defendants' motion to dismiss without prejudice (Doc. #45), the Court observed that Sunbelt had not alleged that Bradley's and Schroeder's employment by LTC

> would improperly transfer customer goodwill tied to Sunbelt's operations in a specific location or area to LTC's operations in the same location or area.

(Doc. #45, pp. 10-11) (citing Surgery Ctr. Holdings, Inc. v. Guirguis, 318 So. 3d 1274, 1281 (Fla. 2d DCA 2021); Litwinczuk v. Palm Beach Cardio. Clinic, L.C., 939 So. 2d 268, 272 (Fla. 4th DCA 2006)). The Court also noted that:

> Despite Sunbelt's assertions to the contrary, Section 5.2.1 does *not* have geographic limitations. Indeed, it is one of two restrictive covenants in the Agreement without such limits.
>
> . . .
>
> It is unclear what limitations in scope — other than the Restrictive Period — would apply to the Covenant in so far as it is animated by Sunbelt's asserted interest in 'ensuring its relationships with its employees remain intact.' As Defendants note, the Covenant, so construed, would prohibit *any* employee, from an executive to a janitor, from being hired by a

company that does business in any one of the over twenty-five industrial sectors to which Sunbelt's alleged expertise extends.

(Doc. #45, p. 11-12, & n.6) (comparing (Doc. #9, p. 69, Agreement, §§ 5.2.1 and 5.2.3) with (id., Agreement §§ 5.2.2, 5.2.4, and 5.2.5). The Court further emphasized that:

> Even if Section 5.2.1 had territorial limitations, Sunbelt has not alleged that LTC's employment of Cox, Schroeder, or its prospective employment of Bradley would fall within that scope. Sunbelt has alleged that any injuries in this action center on a Sunbelt store in Lee County, Florida. Sunbelt has also alleged that LTC is based in Miami-Dade County. However, Sunbelt has not alleged that LTC's business overlaps geographically with that of Sunbelt's Lee County store.

(Doc. #45, p. 11 n.5) (internal citations removed).

Little has changed in Sunbelt's Amended Complaint (Doc. #47.) Sunbelt now contends that this action centers on two stores — one in Port Charlotte, Florida, and the other in Fort Myers, Florida. (Id. at ¶¶ 46, 61.) Sunbelt also asserts that

> Cox used his personal email address to solicit three employees of Sunbelt Rentals, entice them to leave their employment with Sunbelt Rentals, and to begin employment with LTC. . . . As a result of Cox's solicitations, [Bradley and] Schroeder terminated [their] employment with Sunbelt Rentals and [are] now employed by LTC. . . . LTC has . . . improperly transferred customer goodwill in Charlotte County and Lee County tied to Sunbelt Rental's operations.

(Id. at ¶ 77.) But the following questions remain unanswered: **Where** are Bradley and Schroeder now employed? **Where** was the purported customer goodwill allegedly transferred **to**?

The relevance of these facts cannot come as a surprise to

- 3 -

Sunbelt. Sunbelt previously asked LTC to identify the specific "address" and "location" its two former employees, Justin Rueda and Zachary Abbott, and seems to have made similar inquiries about Cox's whereabouts:

> I understand that Justin Rueda and Zachary Abbott are working for LTC Power selling generators, and only generators, out of Homestead, Florida. Can you provide me the address of the location in Homestead? . . . Brian Cox is working as a manager over LTC Power's fleet of generators. He is not working in a customer facing role or in a sales capacity. While he may still live in Fort Myers, he is working with generators throughout different areas of Florida. Please confirm that I have accurately described their roles.

Case No. 2:24-cv-1047 (Doc. #19-1, p. 5-6).

The Court previously explained that "[t]o be valid and enforceable, a restrictive covenant must be," *inter alia,* "reasonable with regard to [] **area**." (Doc. #45, p. 9 (emphasis added) (quoting Proudfoot Consulting Co. v. Gordon, 576 F.3d 1223, 1231 (11th Cir. 2009) (citing Fla. Stat. § 542.335))). The Court also previously explained that Sunbelt "must allege **'how'** [its] interests are being or would be harmed by [LTC] hiring [its] former employee[s]." (Id. at 10 (emphasis added) (citing Passalacqua v. Naviant, Inc., 844 So. 2d 792, 796 (Fla. 4th DCA 2003); Semper Foods, LLC v. Ouellette, No. 23-CV-81420, 2024 WL 3104066, at *11 (S.D. Fla. May 6, 2024), R. & R. adopted, 2024 WL 3495321 (S.D. Fla. July 19, 2024); Lucky Cousins Trucking, Inc. v. QC Energy Res. Texas, LLC, 223 F.

Supp. 3d 1221, 1226 (M.D. Fla. 2016))).

Sunbelt has failed to plead that Bradley and Schroeder are employed by LTC within the protected reach of Sunbelt's Port Charlotte and Fort Myers stores. Sunbelt therefore has not plausibly pled that the enforcement of the restrictive covenant would be reasonable. For the same reasons, it is presently not plausibly pled that any alleged customer goodwill generated in the area from which Sunbelt draws its Port Charlotte and Fort Myers customers is relevant to this dispute. See Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C., 939 So. 2d 268, 273 (Fla. 4th DCA 2006).

Therefore, the motion to dismiss is granted on this ground.

**B. Insufficient Allegations of Highly Specialized Training or Education.**

In the Court's prior order (Doc. #45), the Court also observed that

> Sunbelt has also not alleged that those employees are the beneficiaries of extraordinary training and education. To the contrary, as Defendants note, Sunbelt's allegation that it hired "third parties to cover equipment repairs that would have otherwise been completed by Schroeder" suggests that those employees did ordinary and unspecialized work, such that any interest in barring their departure to LTC would be minimal.

(Doc. #45, p. 11.) In response, Sunbelt now alleges that Bradley and Schroeder:

> (1) [Were] responsible for servicing and repairing the equipment . . . and overseeing the other

- 5 -

>   employees who service and repair equipment at [their respective branches.]
>
> (2) [S]upport[ed] Sunbelt Rentals' branch operations and goodwill by ensuring that equipment is ready on time, is operational, and that the branch operates smoothly.
>
> (3) [S]upported Sunbelt Rentals' goodwill with Sunbelt Rentals' customers by ensuring that equipment was functioning correctly and ready for promised delivery and/or pickup time.[2]
>
> (4) [C]oordinated and directed the workload of the Service Department of [their respective branches] to ensure maximum efficiency and productivity while providing quality repair work.
>
> (5) [Performed work that] was critical to the operation of [their respective branches] because [they] ensured that equipment was timely turned around after each project and prepared for its next project.

(Doc. #47, pp. 10-14.)   Sunbelt further alleges that after Bradley's and Schroeder's departures to LTC:

>   (1) [Their respective branches are] currently understaffed and customer service has been impacted because [they] has lost control over [their] ability to timely repair equipment and prepare the same for pickup and delivery to customers.
>
> (2) Sunbelt Rentals has been forced to use third parties to cover equipment repairs that would have been completed by [Bradley and Schroeder]. The third parties have not been able to adequately replace [them] and Sunbelt Rentals' branch operations and goodwill have suffered due to the inability to properly fix equipment and timely turn the same around for promised pickup and delivery times.

---

[2] Sunbelt also alleges that Schroeder would "arriv[e] on sight [sic] to resolve issues with equipment and satisfy the concerns of customers." (Doc. #47, p. 11).

> (3) The use of third[ ]parties at both Branches (Port Charlotte and Fort Myers) caused and continues to cause Sunbelt Rentals to lose control over quality assurance, the timing of equipment turnarounds, and the ability to promptly service customer concerns with equipment.

(Id.)

Extraordinary training is "that which goes beyond what is usual, regular, common, or customary in the industry in which the employee is employed." Vessels v. Dr. Terrazzo of Fla., LLC, 352 So. 3d 946, 948 (Fla. 5th DCA 2022) (quoting Hapney v. Cent. Garage, Inc., 579 So. 2d 127, 132 (Fla. 2d DCA 1991), disapproved of on other grounds by Gupton v. Vill. Key & Saw Shop, Inc., 656 So. 2d 475 (Fla. 1995)). Treating extraordinary training and education as a protectible business interest is founded on

> [t]he rationale . . . that if an employer dedicates time and money to the extraordinary training and education of an employee, whereby the employee attains a unique skill or an enhanced degree of sophistication in an existing skill, then it is unfair to permit that employee to use those skills to the benefit of a competitor when the employee has contracted not to do so.

(Id.)

Again, little has changed in Sunbelt's Amended Complaint (Doc. #47.) Sunbelt now alleges that Bradley and Schroeder were not just mechanics, but good mechanics. That may explain why

- 7 -

Sunbelt is distressed by their departure.³ But it does not support a preliminary determination that Bradley and Schroeder were the beneficiaries of extraordinary training and education from Sunbelt. Hapney, 579 So. 2d at 948 (concluding that an employee did not receive extraordinary training because the training provided for him merely "extended his air-conditioning installation and repair skills to include cruise control units and cellular telephones"); Vessels, 352 So. 3d at 949 (concluding that even when an employee "learned the basics of terrazzo restoration through" his employer, who "has a great deal of knowledge about terrazzo restoration," that "on-the-job training" was "usual, regular, common or customary in the industry," and so did "not qualify as extraordinary or specialized training").

Therefore, the motion to dismiss is granted on this ground.

**C. Insufficient Allegations of Legitimate Business Interests in Maintaining Stable Operations, Employee Relationships, Employment Continuity, and Workforce Stability.⁴**

In its Response (Doc. #49) to the Motion to Dismiss,

---

³ Why Are Good Mechanics So Damn Hard to Find? ROCKSTAR MECHANICS (last accessed, Apr. 16, 2025), https://tinyurl.com/yr6dyc9r.

⁴ Sunbelt asserts that it "is not alleging substantial customer relationships or confidential information as legitimate business interests for enforcing the non-solicitation covenant. Rather, those legitimate interests support other restrictive covenants in the Agreement that are not at issue here." (Doc. #49, p. 4 n.1.) If so, then future filings should not contain what Sunbelt admits are irrelevant allegations.

- 8 -

Sunbelt asserts that maintaining stable operations, employee continuity, employee relationships, and workforce stability are legitimate business interests. (Id. at 6-8.) It cites a litany of cases. The problem is that in Sunbelt's own words, those are legitimate business interests in so far as they safeguard the "substantial investment" that that an employer makes in "essential employees"; their legal recognition serves "to protect the investment [that] businesses make in cultivating skilled employees." (Id. at 8) (citing Edwards Moving & Rigging, Inc. v. Jenkins, No. 8:19-CV-1004-T-36SPF, 2020 WL 7707025, at *14 (M.D. Fla. Dec. 29, 2020); White v. Mederi Caretenders Visiting Services of S.E. Fla., LLC, 226 So. 3d 774 (Fla. 2017)). Sunbelt has pleaded no "investment" in Bradley and Schroeder — substantial or otherwise — nor any effort put into "cultivating" them.[5]

Therefore, the motion to dismiss is granted.

Accordingly, it is now

**ORDERED:**

1. Defendants Brian Cox's and LTC Power Solutions, LLC's Motion to Dismiss (Doc. #48) is **GRANTED.**

2. Plaintiff Sunbelt Rentals, Inc.'s Amended Complaint (Doc. #47) is **DISMISSED WITHOUT PREJUDICE.**

---

[5] As Sunbelt has again "not adequately pleaded that Section 5.2.1. is valid and enforceable, both of its claims of tortious interference fail as well." (Doc. #45, p. 13-15.)

3. Plaintiff may file an amended complaint within **thirty (30) days** of the date of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this __16th__ day of April 2025.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Parties of record